[No. B172979. Second Dist., Div. Seven. July 13, 2005.]

LINCOLN PLACE TENANTS ASSOCIATION, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al, Defendants and Respondents;
LOS ANGELES LINCOLN PLACE INVESTORS LTD. et al., Real Parties
in Interest and Respondents.

[No. B174028. Second Dist., Div. Seven. July 13, 2005.]

20TH CENTURY ARCHITECTURE ALLIANCE et al., Plaintiffs and
Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents;
LOS ANGELES LINCOLN PLACE INVESTORS LTD. et al., Real Parties
in Interest and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

1492

Counsel

Brandt-Hawley Law Group, Susan Brandt-Hawley and Paige J. Swartley for Plaintiff and Appellant Lincoln Place Tenants Association.

Chatten-Brown & Associates, Jan Chatten-Brown, Amy Minteer; Brandt-Hawley Law Group and Susan Brandt-Hawley for Plaintiffs and Appellants 20th Century Architectural Alliance et al.

Rockard J. Delgadillo, City Attorney, Susan D. Pfann, Assistant City Attorney, and Kim Rodgers Westhoff, Deputy City Attorney, for Defendants and Respondents City of Los Angeles et al.

Irell & Manella and Allan J. Abshez for Real Parties in Interest and Respondents Los Angeles Lincoln Place Investors Ltd., LALPI LLC, LALPI II LLC and Pfeiffer Venice Properties LLC.

Nemecek & Cole, Jonathan B. Cole, Greg Ozhekim and Michael Feenberg for Real Party in Interest and Respondent Aimco Venezia, LLC.

Opinion

**JOHNSON, Acting P. J.**—In this matter involving a redevelopment project in the Venice Beach area of Los Angeles we hold the city cannot disregard the mitigating conditions it placed on the demolition of the buildings without conducting a supplemental California Environmental Quality Act (CEQA) review; the city cannot simply declare the demolition a "different project." We also hold the original environmental impact report (EIR) for the project was not insufficient for failure adequately to consider the historical importance of the structures slated for demolition.

FACTS AND PROCEEDINGS BELOW

The Lincoln Place Apartments were built in 1951 in Venice Beach, a part of the City of Los Angeles. The 52 garden-style apartment buildings contained 795 one- and two-bedroom apartments on 33 acres of land. The apartments were designed around open green spaces with subtropical trees and landscaping on winding streets and cul de sacs.

In 1991 the owners of Lincoln Place proposed a redevelopment project, which involved demolishing the apartments and replacing them with 654 market rate condominiums and town homes, 52 moderate-income town homes and 144 low-income rental units.

In 1993 the city planning department published a draft EIR, which identified and analyzed the effect of the project on numerous environmental elements. With respect to cultural and historical issues the draft report concluded Lincoln Place was "an adequate representation of its era" and a "good example" of a garden apartment complex but that it had "limited historical and architectural interest." The report stated the design concept of Lincoln Place was not new or unique but "loosely based on the 1920's bungalow court/garden apartments." Furthermore the report found Lincoln Place did not "influence[] the design concepts which represent its period" and "better examples of multi-family post-war housing, including housing designed by renowned architects, exist in the Los Angeles area." The report noted other existing examples of low-rent multi-family housing from the same era include Aliso Village designed in the 1940's by Lloyd Wright, son of the preeminent architect Frank Lloyd Wright. The design of Lincoln Place was attributed to Heth Wharton, recipient of several local residential design awards in the 1920's and 1930's but hardly a luminary in the field of architecture.

The analysis of Lincoln Place's historical significance was based primarily on a study undertaken by Dan Peterson, AIA, a specialist in the field of rehabilitation and restoration of historic buildings. Peterson evaluated the historical significance of Lincoln Place using criteria developed by the City of Los Angeles Cultural Heritage Commission and the National Register of Historic Places. The only major difference between these two sets of criteria and the CEQA guidelines[1] for determining historical resources is the National Register's requirement the building be at least 50 years old or of "exceptional significance."[2]

Peterson concluded Lincoln Place did not meet the criteria for cultural or historical significance. It was not associated with an important historical event or person and it was not a significant archaeological resource. The only criterion under which Lincoln Place might qualify is the one for buildings which embody the distinctive characteristics of a type, method or period of construction or represent the work of a master architect or are in some way significant and distinctive. Peterson acknowledged Heth Wharton was "a

---

[1] The CEQA Guidelines are published in title 14 of the California Code of Regulations, section 15000 et sequitur.

[2] All three sets of criteria focus on whether the property is associated with a significant historical event, is associated with the life of an important historical personage, exemplifies a distinctive type, period or method of construction or represents the work of a master builder, architect or designer. (Compare 36 C.F.R. section 60.4 with City of L.A. Admin. Code, section 22.130 and CEQA Guidelines, section 15064.5.)

good architect" but not in the same class as Lloyd Wright and others who designed residential buildings in Los Angeles in the same era. Peterson also noted that although Lincoln Place is "a good example of a low rent garden apartment housing project" of the postwar era there was nothing special about it. It never gained the attention of any major architectural or engineering publication. Furthermore, it is one of many similar housing projects in the Los Angeles area some of which were designed by renowned architects. Finally, Peterson stated Lincoln Place could not qualify under the National Register criteria because it was less than 50 years old and "neither the architect nor the architecture are of the level of significance to obtain eligibility under the exceptional importance classification."

Only one person challenged the draft EIR's conclusion Lincoln Place lacked sufficient cultural or historical significance to warrant its preservation. Gail Sansbury, a candidate for a master's degree in urban planning, submitted written comments on the draft EIR. Sansbury analyzed the roots of the garden apartment approach to urban housing in Europe and the development of this style in postwar America spurred by the Federal Housing Administration (FHA) which provided mortgage insurance to builders of multi-family housing projects for low and moderate income families. To obtain this mortgage insurance a project had to adhere to certain standardized design "guidelines" the FHA developed in the 1930's.

Although Sansbury conceded "the design of the buildings and individual units [at Lincoln Place] are not dissimilar" to those at Aliso Village and Baldwin Hills Village she maintained Lincoln Place should be preserved because it is a "prime example" of multi-family housing built under FHA guidelines for such projects. She also pointed out architect Wharton's design "has been well-maintained and remains essentially unaltered, providing students and scholars of architectural history a rare opportunity to study this form of housing." Finally, Sansbury argued Lincoln Place should be preserved because it "has a rich cultural history which encompasses the social, economic and political events of the War and post-War period" and its architectural design "is an expression of the best hopes of that time for providing all citizens with decent, attractive and affordable housing."

The city planning department responded to Sansbury's comments on the draft EIR. The final report essentially stuck to the view there was nothing about Lincoln Place to distinguish it from the many other multi-family projects constructed during the same period. The report stated, for example,

the fact Lincoln Place was a low rent project utilizing FHA guidelines "does not make it a significant project because there were many projects, besides Lincoln Place, that were built under [the FHA] program and were sources of affordable housing." Furthermore, the report noted, the concept of garden apartments was developed well before Lincoln Place was built. "Beginning as early as 1905 communities and residential developments were designed by planners and architects, and new street patterns were developed in lieu of the gridiron plan." The report also found "[t]he patterns of style of government assisted muti-family housing had not changed in Los Angeles since the late 1930s, and Lincoln Place is not significant in that regard." The fact there is no mention of Lincoln Place in any of the architectural journals of the period was another factor which led the authors of the EIR to conclude Lincoln Place "is not an obvious outstanding example of a site or building which warrants recognition as being historically significant." As to Lincoln Place's cultural significance to Venice, the report observed the social history of Venice focuses on the beach and the canals, neither of which are proximate to Lincoln Place. The report dismissed the cultural and social history of Lincoln Place itself as "not relevant to the historical value of the project."

The EIR concluded "Lincoln Place has some historical and architectural value, but this value is not of a level of particular historical significance[.]" However, because "the architectural history of multi-family development in the Post World War II era has not been the subject of extensive academic study," the report recommended that prior to demolishing the present structures photographs should be taken of typical interiors and exteriors and drawings made of each type of unit and of the overall site plan. In addition, prior to their demolition the structures at Lincoln Place were to be offered for sale and removal to a new location.

In 1995 the city planning commission approved the proposed Lincoln Place redevelopment. This touched off seven years of litigation over the issue of whether the redevelopment would illegally remove affordable housing from the Los Angeles housing market.[3]

In 2000, while the affordable housing litigation was still pending, the Lincoln Place Tenants Association (Tenants) filed an application with the Los Angeles Cultural Heritage Commission to have the Lincoln Place Apartments declared a historic monument. The application was largely based on the

---

[3] See for example *Los Angeles Lincoln Place Investors, Ltd. v. City of Los Angeles* (1997) 54 Cal.App.4th 53 [62 Cal.Rptr.2d 600].

information contained in the master's degree thesis by Gail Sansbury, discussed above, which reviewed and analyzed the historical, political and artistic aspects of the Lincoln Place apartments. The owners of Lincoln Place opposed the application for monument status and submitted a report by Robert Chattel, AIA, expressing the view the property did not meet the city's criteria for designation as a historic monument. Chattel's report noted a portion of another garden style apartment complex, Park La Brea, had already been designated a city historic monument. Like Peterson, both Sansbury and Chattel identified Heth Wharton as the sole architect of Lincoln Place. This turned out to be incorrect as we discuss more fully below.

The Heritage Commission reviewed the application, the draft and final EIR, the Sansbury thesis, the reports prepared by architect Chattel, and conducted two public hearings. It declined to name Lincoln Place a historic monument. Tenants did not appeal the commission's decision and it is now final.

In 2002, after the last appeal in the affordable housing litigation was dismissed, the question of approving the Lincoln Place redevelopment project was again referred to the city council's planning and land use management committee, (the PLUM committee). Before the committee held a hearing on the approval issue the city planning department reviewed the adequacy of the EIR which had been prepared in 1994. The planning department concluded the EIR still sufficiently described the historical and cultural impacts of the project. The department stated that with the mitigation measures discussed above the historical impact of demolition would be "less than significant."[4]

The PLUM committee held a public hearing on the project in November 2002. There Tenants claimed for the first time new information had come to light, which required preparation and circulation of a revised EIR on the project. On the issue of the historical and cultural impact of the proposed redevelopment, Tenants asserted new facts, which had not been known or had not existed at the time the EIR was prepared. First, Tenants had discovered the EIR was wrong in attributing the design of Lincoln Place solely to Heth Wharton. Newly discovered evidence showed the apartment complex actually had been designed by an African-American architect, Ralph Vaughn. Appar-

---

[4] See discussion at pages 1496–1497, *ante.*

ently Vaughn did not have a California architect's license at the time he was hired to design Lincoln Place so he teamed up with Wharton and did the work under Wharton's license. Second, Lincoln Place had recently been nominated to the National Register of Historic Places and a hearing on the nomination before the California Office of Historic Preservation was pending at the time of the PLUM committee meeting.[5]

The planning department staff responded by acknowledging it now appeared Vaughn "played a role in the design of Lincoln Place." In addition the staff agreed the CEQA Guidelines required determination of the significance of a project's impact on historical resources. The staff contended, however, this new information did not require a reevaluation of the historical and cultural impact of the redevelopment project. The CEQA Guidelines for evaluating historical impact were similar to the city's criteria for conferring monument status which had already been assessed in architect Dan Peterson's report for the EIR.[6] Furthermore, although Ralph Vaughn did win two awards for architecture the staff did not believe this fact made Lincoln Place "the work of an important, creative individual" under the CEQA Guidelines. The transcript of the committee hearing is incomplete due to a faulty tape, so the record does not show whether the staff responded to Tenant's claim the mitigation measures could no longer be fully accomplished.

The PLUM committee voted not to await the state's action on the nomination of Lincoln Place to the National Register of Historic Places. The committee recommended the city council approve the proposed redevelopment project without amendment and recirculation of the EIR. The committee found no substantial evidence Ralph Vaughn was a celebrated architect or that Lincoln Place was a notable expression of his style. It further found the preponderance of the evidence demonstrated Lincoln Place was not a "historical resource" as defined by the CEQA Guidelines.

In November 2002 the city council adopted the recommendations of the PLUM committee, certified the EIR and approved the Lincoln Place redevelopment project with the mitigating conditions discussed above.[7]

Following the city council's certification of the Lincoln Place EIR and approval of the redevelopment project the State Historical Resources Commission held a hearing on the nomination of Lincoln Place for inclusion in

---

[5] To obtain a place on the National Register a private property must usually be nominated by a state historic preservation program. (36 C.F.R. § 60.1, subd. (b).)

[6] See discussion at pages 1495–1496, *ante.*

[7] See discussion at page 1498, *ante.*

the National Register of Historic Places. By a vote of seven to one the commission determined Lincoln Place eligible for listing in the National Register under two criteria: (1) it is associated with events which "made a significant contribution" to national history and (2) it embodies "the distinctive characteristics of a type, period or method of construction" or it "embodies the work of a master" or it possesses "high artistic values."[8]

After the State Historical Resources Commission determined Lincoln Place eligible for inclusion in the National Register it forwarded the nomination to the Keeper of the National Register of Historic Places.[9] The Keeper neither approved nor rejected the nomination but returned it to the commission for further information and a response to the owner's objection to the property's registration. So far as the appellate record shows, no further action on the nomination has been taken by the nominators, the commission or the Keeper.

A month after the State Historical Resources Commission determined the Lincoln Place apartments were eligible for inclusion in the National Register the owners applied for permits to demolish five Lincoln Place structures on Lake Street (the Lake Street demolition). Based on the owners' claim the Lake Street demolition was not part of the previously approved redevelopment project, the city planning department ruled "compliance with the [project] conditions is not required prior to issuance of the demolition permits." The Department of Building and Safety issued the demolition permits without requiring the owners to comply with any of the predemolition conditions the city had attached to its approval of the redevelopment project including requirements the structures proposed to be destroyed first be offered for sale for relocation to another site and that the structures be documented by photographs and drawings.

Alliance appealed the decision to issue the demolition permits to the Board of Building and Safety Commissioners. It based its appeal in part on the ground the California Historic Resources Commission had concluded Lincoln Place is eligible for listing in the National Register of Historic Places. In light of this finding, Alliance argued, issuing the demolition permits was unlawful because the department had not conducted the analysis and made the findings required by Los Angeles Municipal Code section 91.106.4.5, which regulates the demolition of "significant historical or cultural assets." Alliance submitted numerous documents in support of its appeal including the detailed analysis

---

[8] 36 Code of Federal Regulations section 60.4.
[9] 36 Code of Federal Regulations section 60.1, subdivision (b)(3).

of Lincoln Place, which accompanied the National Register nomination. Alliance also objected to the demolition on the ground the owners had failed to comply with the predemolition conditions the city had attached to its approval of the redevelopment project.

After conducting a public hearing the Board of Building and Safety Commissioners denied the appeal. The commissioners adopted the report of the Department of Building and Safety, which concluded Lincoln Place was not a "significant historical or cultural asset" within the meaning of Los Angeles Municipal Code section 91.106.4.5. The board did not address the issue of whether the Lincoln Place owners were required to comply with the predemolition conditions attached to the EIR and tract map approval.

After the city council approved the Lincoln Place redevelopment project in 2002, two writ petitions were filed seeking to halt the project.

Tenants filed a petition for a writ of mandate ordering the city to set aside and void its approval of the Lincoln Place redevelopment project on the grounds the EIR on the project failed to meet the CEQA requirements for an EIR, the city's findings certifying the EIR were inadequate, conclusory and not supported by substantial evidence, and the city failed to consider and adopt feasible project mitigation measures. An amended petition added a cause of action for declaratory relief. The gist of the petition is that the EIR prepared in 1994 failed adequately to consider the historical and cultural impact of demolishing the Lincoln Place apartments and since then new information regarding their cultural and historical significance has surfaced requiring the EIR be supplemented and recirculated. Tenants sought an ex parte order staying the demolition of Lincoln Place buildings. The trial court denied the stay and thereafter denied the petition for writ of mandate. Tenants filed a timely appeal.

While Tenants' writ petition was pending, the 20th Century Architectural Alliance and other historic preservation organizations (which we will refer to collectively as Alliance) filed a writ petition to set aside and void the Lake Street demolition and to enjoin the issuance of any further permits on the ground the city was issuing the permits in violation of CEQA and the Los Angeles Municipal Code. This petition too was denied on the merits and a timely appeal was filed. In the meantime more apartment buildings were demolished.

In response to the imminent threat of additional demolitions we issued a writ of supersedeas in the Alliance appeal staying further demolition of Lincoln Place pending disposition of the appeal.[10] We ordered the two appeals heard and considered together.

For the reasons set forth below we reverse the judgment denying Alliance's petition for a writ of mandate and remand the cause to the superior court with directions to issue a writ of mandate requiring the city to vacate and set aside its approval of any application for a demolition permit which does not contain satisfactory evidence of compliance with the preconditions on demolition adopted in the authorization of the Lincoln Place redevelopment project until and unless those conditions are modified or deleted following a proper CEQA review. As to Tenants' appeal we find the original EIR contained an adequate analysis of the historical aspects of Lincoln Place and subsequent events did not call for further CEQA review. Therefore, we affirm the judgment denying Tenants' petition for writ of mandate.

## DISCUSSION

### I. *Standard of Review.*

■ Generally speaking the question on judicial review of an agency's decision under CEQA is whether the agency abused its discretion. Abuse of discretion in this context means the agency failed to proceed as required by law or there was no substantial evidence to support its decision.[11] Thus in reviewing the adequacy of an EIR the trial court does not determine whether the agency's final determinations were correct but only whether the agency arrived at them in accordance with the law and on the basis of substantial evidence. On appeal we independently review the administrative record under the same standard of review which governs the trial court.[12] The question of what constitutes a "project" for purposes of CEQA review is a question of law which we review de novo.[13]

---

[10] We reject the contention of the city and the owners this case should be dismissed as moot because the Lake Street demolition has already taken place. More than 40 buildings remain in Lincoln Place. Thus the issues raised in this appeal are likely to reoccur in subsequent cases. Furthermore, there is a continuing public interest in preserving historical sites and in the city's method of dealing with demolition permits affecting those sites. (*San Diego Trust & Savings Bank v. Friends of Gill* (1981) 121 Cal.App.3d 203, 209 [174 Cal.Rptr. 784].)

[11] Public Resources Code sections 21168, 21168.5. All future statutory references are to the Public Resources Code unless otherwise specified.

[12] *Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1199, 1200 [24 Cal.Rptr.3d 543].

[13] *Association for a Cleaner Environment v. Yosemite Community College Dist.* (2004) 116 Cal.App.4th 629, 637 [10 Cal.Rptr.3d 560].

II. *The City Failed to Proceed in Accordance with Law When It
Issued Demolition Permits Without Requiring Either Compliance
with the Predemolition Conditions It Placed on the Redevelopment
Project or Conducting CEQA Review of Its Decision Those
Conditions Were Inapplicable to the Proposed Demolition.*

Alliance sought a writ of mandate in the Los Angeles Superior Court to
overturn the Board of Building and Safety Commissioners' decision to permit
the Lake Street demolition. Alliance contended demolition violated Los
Angeles Municipal Code section 91.106.4.5 and provisions of CEQA requir-
ing environmental review. As to the first contention Alliance argued destruc-
tion of the buildings would "result in the loss of or serious damage to a
significant historical or cultural asset." As to the second contention, Alliance
argued if the demolition was for a different project than the one approved by
the city council in 2002, as contended by the planning department and the
owners, then a new EIR had to be prepared before the demolition could take
place. The 1994 EIR for the redevelopment project would not suffice because
it was "for a different project," it did not include the new information
regarding the eligibility of Lincoln Place for inclusion in the National
Register of Historic Places and, even if the existing EIR could be used in
evaluating the demolition, the department failed to follow the CEQA proce-
dures for use of an EIR from an earlier project.[14]

As previously stated, the trial court denied the petition and five structures
were demolished.

We disagree with Alliance's contention the city failed to observe the
requirements of Los Angeles Municipal Code section 91.106.4.5. We do
agree, however, the city failed to proceed in the manner required by law
when it issued permits for the Lake Street demolition without requiring the
owners to comply with the predemolition conditions it imposed on the
redevelopment project or conducting CEQA review of its decision those
conditions were no longer appropriate.

A. *The Department of Building and Safety Complied with Los
Angeles Municipal Code Section 91.106.4.5 in Issuing
Demolition Permits for Lincoln Place.*

Los Angeles Municipal Code section 91.106.4.5 reads as follows. "Permits
For Historical And Cultural Buildings. The department shall not issue a
permit to demolish, alter or remove a building or structure of

---

[14] CEQA Guidelines section 15153.

historical, archeological or architectural consequence if such building or structure has been officially designated, or has been determined by state or federal action to be eligible for designation, on the National Register of Historic Places . . . without the department having first determined whether the demolition, alteration or removal may result in the loss of or serious damage to a significant historical or cultural asset. If the department determines that such a loss or damage may occur, the applicant shall file an application and pay all fees for the California Environmental Quality Act Initial Study and Check List . . . . If the Initial Study and Check List identifies the historical or cultural asset as significant, the permit shall not be issued without the department first finding that specific economic, social or other considerations make infeasible the preservation of the building or structure."

■ Under this code section the issuance of a demolition permit requires up to four steps. The first step is to ascertain whether the building or structure has been officially designated, or has been determined by state or federal action to be eligible for designation, on the National Register of Historic Places. A property may be found *eligible* for listing but not actually listed if the owners file an objection to the listing.[15] If the property has been determined eligible for inclusion in the National Register, the second step is to determine whether the demolition, alteration or removal may result in the loss of or serious damage to a significant historical or cultural asset. If so, the third step is to conduct an initial study under CEQA[16] to ascertain whether the building or structure is a significant historical or cultural asset as defined by CEQA.[17] If the initial study identifies the building or structure as a significant historical or cultural asset the fourth step is to determine whether specific economic, social or other considerations make infeasible the preservation of the building or structure.

Here, the department correctly analyzed the first step. By forwarding the nomination to the keeper of the National Register of Historic Places, the State Historical Resources Commission necessarily determined Lincoln Place to be eligible for designation on the National Register of Historic Places. Although the keeper makes the final decision whether to include a property in

---

[15] See section 5024.1, subdivision (f)(4), (5); 36 Code of Federal Regulations section 60.6, subdivision (g). The owners of Lincoln Place objected to the listing.

[16] See CEQA Guidelines section 15063. "The initial study is a preliminary analysis prepared to assist the agency in deciding whether an EIR or a negative declaration should be prepared for the project and to identify the significant environmental effects to be analyzed if an EIR is required." (1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2004) § 6.2, p. 254.)

[17] CEQA Guidelines section 15064.5 and see discussion at pages 1496–1497, *ante*.

the National Register, if the commission did not believe Lincoln Place met the standards for inclusion it obviously would not have forwarded the nomination to the keeper.

The department then had to take the second step in the analysis and determine whether demolition of structures at Lincoln Place may result in the loss or serious damage to a significant historical or cultural asset.

Alliance argues the state's finding Lincoln Place was eligible for inclusion in the National Register obligates the city to find Lincoln Place is a significant historical or cultural asset. We disagree.

The argument advanced by Alliance is contrary to the plain language of the code section which requires as part of step two a determination whether demolition, alteration or removal may result in the loss of or serious damage to a significant historical or cultural asset. If eligibility for inclusion in the National Register automatically qualified a property as a significant historical or cultural asset there would be no reason to require such a determination as part of step two. The only question would be whether demolition, alteration or removal would result in loss or serious damage to the property.

Furthermore, if Los Angeles Municipal Code section 91.106.4.5 intended to mandate significant historical status for properties found eligible for inclusion in the National Register it could have said so. For example, CEQA Guidelines section 15064.5, subdivision (a)(1) provides "the term 'historical resources' *shall include* . . . [¶] [a] resource listed in, or determined to be eligible by the State Historical Resources Commission, for listing in the California Register of Historical Resources . . . ." (Italics added.)

Alliance argues there is no substantial evidence to support the decision by the Board of Building and Safety Commissioners that Lincoln Place is *not* a significant historical or cultural asset.

The record shows otherwise. The Board had before it all of the evidence which was before the PLUM commission plus the record considered by the State Historical Resources Commission.[18] Therefore we conclude substantial evidence supported the Board's decision Lincoln Place is not a significant historical or cultural asset.[19]

---

[18] See discussion at pages 1498–1500, *ante.*

[19] Given this conclusion we need not attempt to reconcile the provisions of Los Angeles Municipal Code section 91.106.4.5 with the CEQA Guidelines which also address projects affecting significant historical resources. Under CEQA an EIR must be prepared when a public agency proposes to approve a project which "may have a significant effect on the environment." (Section 21100, subd. (a).) A project which "may cause a substantial adverse change in

B. *The Department of Building and Safety Failed to Proceed in Accordance with Law When It Issued Demolition Permits Without Requiring Compliance with the Predemolition Conditions Placed on the Redevelopment Project or Conducting CEQA Review to Determine Whether Those Conditions Were Infeasible.*

In the proceedings below the city and the owners of Lincoln Place took the position the Lake Street demolition was not part of the redevelopment project and therefore compliance with its conditions "is not required prior to issuance of the demolition permits." In opposing Alliance's petition for a writ of mandate the owners argued to the trial court the city had merely approved a tract map and a "tract map is an entitlement to build; it is not an entitlement to demolish." Therefore, the owners contended, they only had to comply with the conditions on the redevelopment project "when we start building." But as Alliance correctly points out, the city and the owners cannot have it both ways. If the Lake Street demolition is not part of the Lincoln Place redevelopment project then it requires a CEQA review. If the Lake Street demolition is part of the Lincoln Place redevelopment project then the owners must comply with the conditions on demolition imposed in the project approval or conduct further CEQA review to determine if those conditions are no longer feasible.

■ We find the distinction drawn by the city and the owners between the "demolition project" and the "redevelopment project," is disingenuous at best. Under CEQA a "project" is "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment[.]"[20] This definition is amplified in the CEQA Guidelines, which define a "project" as *"the whole of an action,* which has a potential for resulting in" a direct or indirect physical change in the environment.[21] Thus, CEQA's requirements "cannot be avoided by chopping up proposed projects into bite-size pieces which, individually considered, might be found to have no significant effect on the environment or to be only ministerial."[22]

---

the significance of an historical resource is a project that may have a significant effect on the environment." (CEQA Guidelines, § 15064.5, subd. (b).) Thus a finding under the municipal code that a proposed demolition may result in the loss or serious damage to a significant historical asset would trigger not only the determinations called for under the municipal code but an EIR as well. Steps three and four under the municipal code therefore appear to be subsumed in the EIR process.

[20] Section 21065.

[21] CEQA Guidelines section 15378, subdivision (a), italics added.

[22] *Plan for Arcadia, Inc. v. City Council of Arcadia* (1974) 42 Cal.App.3d 712, 726 [117 Cal.Rptr. 96]. Thus, under the facts of this case, it cannot be argued CEQA does not apply to the Lake Street demolition on the ground demolition permits are ministerial acts. (§ 21080,

It is beyond dispute demolition of the existing Lincoln Place apartments has always been a part of the owners' plan. The EIR for the redevelopment project states in its first sentence: "The applicant proposes to demolish 795 apartments grouped in 52 buildings . . . ."

Nor can there be any doubt that prior to the demolition of *any* Lincoln Place structure the owners were required to comply with the relevant conditions attached to approval of the redevelopment project. The planning department's findings adopted by the city council in approving the project state: "[T]he following changes or alterations discussed in the final EIR *have been incorporated into the project as conditions of approval* which will mitigate or avoid historic resources impacts to a less-than-significant level: *Prior to demolition*, existing development shall be documented[.]" (Italics added.) The conditions for approval of the redevelopment project further provide: "That for *30 days prior to demolition*, the owner shall offer to sell prior to demolition the structure . . . for relocation to another site[.]" (Italics added.)

Having placed these conditions on the demolition segment of the redevelopment project, the city cannot simply ignore them. Mitigating conditions are not mere expressions of hope. Section 21002.1, subdivision (b) states: "Each public agency shall mitigate or avoid the significant effects on the environment of projects that it carries out or approves whenever it is feasible to do so." Furthermore, "[a] public agency shall provide that measures to mitigate or avoid significant effects on the environment are fully enforceable through permit conditions, agreements, or other measures."[23] "The purpose of these requirements is to ensure that feasible mitigation measures will actually be implemented as a condition of development, and not merely adopted and then neglected or disregarded."[24]

 Although the city cannot ignore the mitigating conditions it imposed on the Lincoln Place redevelopment project it can modify or delete them. After a project has been approved and while it is still being developed a mitigation measure or condition of approval may be changed or deleted if the

---

subd. (b)(1); and see *Friends of Westwood, Inc. v. City of Los Angeles* (1987) 191 Cal.App.3d 259 [235 Cal.Rptr. 788].) Therefore we need not decide whether as a general rule demolition permits issued by the City of Los Angeles are ministerial or discretionary. (L.A. Mun. Code, § 91.106.4.1 ["When the [Department of Building and Safety] determines that the information on the application and plans is in conformance with this Code and other relevant codes and ordinances, the department shall issue a permit upon receipt of the total fees."])

[23] Section 21081.6, subdivision (b).

[24] *Federation of Hillside & Canyon Associations v. City of Los Angeles* (2000) 83 Cal.App.4th 1252, 1261 [100 Cal.Rptr.2d 301], italics omitted.

measure has been found to be impractical or unworkable.[25] In *Napa Citizens for Honest Government*, the court stated the following rules for the modification or deletion of a previously adopted mitigating condition. "[W]hen an earlier adopted mitigation measure has been deleted, the deference to governing bodies with respect to land use planning decisions must be tempered by the presumption that the governing body adopted the mitigation measure in the first place only after due investigation and consideration. We therefore hold that a governing body must state a legitimate reason for deleting an earlier adopted mitigation measure, and must support that statement of reason with substantial evidence. If no legitimate reason for the deletion has been stated, or if the evidence does not support the governing body's finding, the land use plan, as modified by the deletion or deletions, is invalid and cannot be enforced."[26] The court further held a previously adopted mitigation measure cannot be deleted "without a showing that it is infeasible."[27] In addition, the court stated, "the deletion of an earlier adopted measure should be considered in reviewing any conclusion that the benefits of a project outweigh its unmitigated impact on the environment."[28] Clearly, these rules should apply to all projects which come within CEQA, not just land use plans.

■ The court in *Napa Citizens for Honest Government* did not elaborate on the procedure a public agency should follow in deciding whether a previously adopted mitigation measure is no longer feasible.[29] However, because an initial determination a mitigation measure is infeasible must be included in the EIR and supported by substantial evidence[30] it is logical to require a later determination a mitigation measure is infeasible be included in a supplemental EIR and supported by substantial evidence.[31]

---

[25] *Napa Citizens for Honest Government v. Napa County Bd. of Supervisors* (2001) 91 Cal.App.4th 342, 358–359 [110 Cal.Rptr.2d 579]; and see discussion in 1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *supra,* section 14.24, pages 580.6–580.7.

[26] *Napa Citizens for Honest Government v. Napa County Bd. of Supervisors, supra,* 91 Cal.App.4th at page 359.

[27] *Napa Citizens for Honest Government v. Napa County Bd. of Supervisors, supra,* 91 Cal.App.4th at page 359.

[28] *Napa Citizens for Honest Government v. Napa County Bd. of Supervisors, supra,* 91 Cal.App.4th at page 359.

[29] The court did not need to address this issue because the county had already adopted a subsequent EIR deleting previously adopted mitigation measures in its land use plan. The issue before the court was whether a mitigation measure once adopted could *ever* be deleted. (*Napa Citizens for Honest Government v. Napa County Bd. of Supervisors, supra,* 91 Cal.App.4th at page 358.)

[30] Section 21081, subdivision (a)(3); CEQA Guidelines section 15091, subdivisions (a)(3), (b).

[31] A supplemental EIR is one which addresses substantial changes in circumstances or new information affecting the environmental impact of the project but which do not require a complete new EIR. (CEQA Guidelines, §§ 15162, 15163.) A supplemental EIR is given the

■ In the present case the city failed to proceed according to law by permitting the owners of Lincoln Place to proceed with the demolition of structures on the property without complying with the predemolition conditions, without stating a legitimate reason for ignoring those mitigation measures and without preparing and circulating a supplemental EIR. For these reasons the demolition permits were unlawful and invalid and the trial court erred in denying Alliance's petition for a writ of mandate and an injunction to prevent further demolition until the owners complied with the existing preconditions on demolition or the city modified or deleted those conditions through a supplemental EIR.

III.–IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

In the action brought by 20th Century Architecture Alliance and others (Super. Ct. L.A. County No. BS083089) the judgment is affirmed insofar as it denies declaratory relief. The judgment denying the petition for a writ of mandate is reversed and the cause is remanded with directions to the superior court to issue a writ of mandate requiring the city to vacate and set aside its approval of any application for a demolition permit which does not contain satisfactory evidence of compliance with the preconditions on demolition adopted in the authorization of the Lincoln Place redevelopment project. The superior court shall further issue a permanent injunction prohibiting the city from issuing a demolition permit for any Lincoln Place structure unless (1) the applicant shows satisfactory evidence of compliance with the preconditions on demolition adopted in the authorization of the Lincoln Place redevelopment project or (2) those preconditions are modified or deleted following the issuance and consideration of a supplemental EIR for the Lincoln Place redevelopment project. The superior court shall exercise discretion consistent with Code of Civil Procedure section 1021.5 with respect to an award of attorney fees to the petitioners in this cause. The writ of supersedeas previously issued in this cause shall remain in effect until this opinion is final. The petitioners are awarded their costs on appeal.

---

same kind of notice and public review as is given a draft EIR. (CEQA Guidelines, § 15163, subd. (c).)

*See footnote, *ante*, page 1491.

In the action brought by the Lincoln Place Tenants Association (Super. Ct. L.A. County No. BS080362) the judgment is affirmed. Respondents are awarded their costs on appeal.

Woods, J., and Zelon, J., concurred.

A petition for rehearing was denied August 11, 2005, and the opinion was modified to read as printed above.