[No. A120170. First Dist., Div. Three. Oct. 29, 2008.]

SUSTAINABILITY OF PARKS, RECYCLING AND WILDLIFE LEGAL DEFENSE FUND, Plaintiff and Appellant, v.
COUNTY OF SOLANO DEPARTMENT OF RESOURCE MANAGEMENT, Defendant and Respondent.

1352

Counsel

Kelly T. Smith for Plaintiff and Appellant.

Dennis Bunting, County Counsel, Azniv Darbinian, Assistant County Counsel, and Lori Mazzella, Deputy County Counsel, for Defendant and Respondent.

Opinion

**SIGGINS, J.**—Sustainability of Parks, Recycling and Wildlife Legal Defense Fund (SPRAWLDEF) appeals following its unsuccessful attempt to secure an administrative hearing before the County of Solano Department of Resource Management (the Department) in order to challenge proposed revisions to a solid waste facility permit for the Potrero Hills Landfill. After the Department denied SPRAWLDEF's request for a hearing, SPRAWLDEF filed a petition for a writ of mandate to compel the Department to hold the hearing under Public Resources Code section 44307.[1] SPRAWLDEF appeals from the trial court's denial of the petition.

We hold that under section 44307 SPRAWLDEF was entitled to an administrative hearing. We therefore reverse the court order denying the writ petition.

## BACKGROUND

### A. *Applicable Procedures Under the Solid Waste Management Act*

Division 30, known as the California Integrated Waste Management Act of 1989 (Act; § 40000 et seq.), was added to the Public Resources Code in

---

[1] All further statutory references are to the Public Resources Code unless otherwise indicated.

1989. (Stats. 1989, ch. 1095, § 22, p. 3812; see *Valley Vista Services, Inc. v. City of Monterey Park* (2004) 118 Cal.App.4th 881, 886 [13 Cal.Rptr.3d 433].) "The Act is designed to protect the environment, improve regulation of existing landfills, ensure that new landfills are environmentally sound, improve permitting procedures for solid waste management facilities, and specify the responsibilities of local governments to develop and implement integrated waste management plans." (118 Cal.App.4th at p. 886.)

■ Under the Act, any person seeking to operate a solid waste facility must obtain a permit from an authorized local enforcement agency. (§ 44001; Cal. Code Regs., tit. 27, § 21450.) A permitted operator of a solid waste facility who wishes to make a significant change in the design or operation of its facility in a manner not authorized by its permit must apply to the local enforcement agency for a revised permit. (§ 44004.) "The enforcement agency may only issue the permit . . . if it finds that the proposed solid waste facilities permit is consistent with this division and any regulations adopted by the [California Integrated Waste Management Board] pursuant to this division applicable to solid waste facilities." (§ 44008, subd. (b).)

■ The local enforcement agency (LEA) is required to provide the California Integrated Waste Management Board (the State Board) with a copy of the proposed permit at least 65 days before it issues or revises it, and must decide whether it will issue the permit within 120 days from receipt of the operator's completed application. (§§ 44007, 44008.)

Within 60 days of its receipt of the proposed permit from the LEA, the State Board must either concur or object to its issuance or revision. (§ 44009, subd. (a)(1).) Subject to exceptions not applicable here, the State Board is deemed to have concurred in a proposed permit if it fails to act within 60 days after it receives the application. (§ 44009, subd. (a)(1), (3).)

Section 44307 requires the LEA to hold hearings in certain circumstances when requested by permit applicants or members of the public. It states: "From the date of issuance of a permit that imposes conditions that are inappropriate, as contended by the applicant, or after the taking of any enforcement action pursuant to Part 5 . . . by the enforcement agency, the enforcement agency shall hold a hearing, if requested to do so, by the person subject to the action. The enforcement agency shall also hold a hearing upon a petition to the enforcement agency from any person requesting the enforcement agency to review an alleged failure of the agency to act as required by law or regulation. A hearing shall be held in accordance with the procedures specified in Section 44310." (*Ibid.*)

Section 44310, subdivision (a)(1) specifies that "[t]he hearing shall be initiated by the filing of a written request for a hearing with a statement of the issues."

## B. *The Potrero Hills Permit*

Potrero Hills Landfill, Inc. (Potrero Hills), operates its landfill in Solano County. The Department is the county's designated LEA. In October 2006, Potrero Hills applied for a revised solid waste facility permit in order to extend its hours of operation and increase the daily tonnage it could accept for disposal. The Department submitted the proposed permit to the State Board on November 21, 2006.

On December 6, 2006, SPRAWLDEF petitioned the Department under section 44307 for a hearing on the Potrero Hills permit due to the Department's alleged failure to act as required by law or regulation. The petition specifically identified the following issues: "1. The LEA failed to reject or condition the landfill permit application due to repeated violations of state minimum operating standards relating to consistent and unabated litter from landfill operations which has significant aesthetic impact as well as impact on the surrounding marshlands and grassland ecology, and the natural life of the marshlands and grasslands. [¶] 2. The LEA failed to reject or condition the landfill permit application due to defective leachate discharge operations at the landfill, including but not limited to the destruction of pumps and outflow systems by the weight of landfill tonnage. [¶] 3. The LEA failed to reject or condition the landfill permit to prevent or limit the impact of noise and lighting from both the landfill operations and trucking to the landfill which would detrimentally impact the habitat and viability of marshland species. [¶] 4. The LEA failed to reject or condition the landfill permit application on the basis that it misstated, improperly counted, or otherwise misrepresented materials counted as alternative daily cover, recycling or beneficial use, in violation of state regulations, statutes or policies. The proposed permitted level of tonnage accepted for disposal is therefore inaccurate and fails to properly state the expected landfilled tonnages into the facility. [¶] 5. The LEA failed to reject or condition the landfill permit application for failing to properly provide and describe slopes stability standards and construction. [¶] 6. The LEA failed to reject or condition the landfill permit application for failing to address the inconsistency of tipping fees in effect at [Potrero Hills], among the lowest in Northern California, with the landfill diversion goals of the Solano County Integrated Waste Management Plan (COIWMP) and the goals of COIWMPs of other counties such as Contra Costa, Alameda, Santa Clara, San Mateo, San Francisco, Marin, Sonoma, Mendocino, Lake, and Napa, which rely for financing on per-ton recycling surcharges or fees or business taxes and consequently suffer loss of public funds and ability to attain the goals of the California Integrated Waste Management Act."

The Department rejected the request. In its December 12, 2006, letter to SPRAWLDEF, the Department explained that "Section 44307 does not authorize such an administrative challenge to a proposed solid waste facility permit; therefore, SPRAWLDEF's petition is improper and no administrative hearing will be scheduled. The legislative history of the statute shows that the intent, in pertinent part, of the amendment adding the administrative hearing provision was to 'allow an applicant to request a hearing if the enforcement agency denies the permit or if the applicant determines that the terms and conditions imposed by the permit are inappropriate . . . to revise provisions pertaining to the denial, suspension, or revocation of permits,' and to 'revise and recast provisions pertaining to corrective action and cease and desist orders. . . .' " The Department also maintained that SPRAWLDEF did not allege a "failure to act as required by law or regulation" as contemplated by section 44307, and that "the public, including SPRAWLDEF, has had ample opportunity to participate in the administrative process and object or otherwise comment on the proposed permit conditions at the various public hearings in front of the LEA and the CIWMB."

The State Board held hearings on the Potrero Hills application on December 4 and December 7, 2006. Three members voted in favor, one voted against, and one abstained. But the hearing resulted in no action because a concurrence or an objection requires four votes. Accordingly, the State Board was deemed to have concurred in the revised permit as a matter of law on December 25, 2006. (§ 44009, subd. (a)(1), (3).)

SPRAWLDEF filed a petition for writ of mandate in the superior court to challenge the Department's refusal to hold the requested hearing. It sought four categories of relief: (1) a peremptory writ of mandamus "to set aside and void any approvals of the Permit and to order the County to comply with all provisions of the California Public Resources Code and all other applicable laws prior to approval of the proposed permit"; (2) a declaration that section 44307 is applicable and the Department's refusal to hold a hearing was improper; (3) an order immediately staying any operation of the landfill under the revised permit; and (4) "injunctive relief as necessary" to remediate any physical, legal or financial actions undertaken pursuant to the revised permit.[2]

The Department demurred to the petition on the ground that SPRAWLDEF did not name Potrero Hills as a respondent or real party in interest, and could not remedy this failure to join an indispensable party because the statute of limitations had run. The court's tentative ruling was to sustain the demurrer. At the hearing on the demurrer, counsel for SPRAWLDEF offered to amend the prayer for relief in such a way as to "completely remove the harm to the

---

[2] SPRAWLDEF additionally sought costs, fees, and "other and further relief as the court finds proper."

landfill [on which] the Court bases its finding of indispensability." Counsel then orally amended the petition to eliminate the claims for a stay and for injunctive and declaratory relief. In light of those amendments, the court overruled the demurrer.

After additional briefing and another hearing, the court agreed with the Department's view that section 44307 did not require the Department to hold the hearing sought by SPRAWLDEF and denied the petition for writ of mandate. This appeal timely followed.

## DISCUSSION

SPRAWLDEF contends the Department as the LEA had a ministerial duty to honor SPRAWLDEF's request and convene an administrative hearing under section 44307. The Department maintains that section 44307 authorizes only operators, not third parties, to petition for a hearing relating to the propriety of permit conditions. We conclude that SPRAWLDEF's interpretation of the statutory right to a hearing is correct. We also reject the Department's threshold contention that the amended petition fails to state a claim for relief.

### A.  *Standard of Review*

"In reviewing the trial court's ruling on a writ of mandate [citation], the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial evidence. [Citation.] However, the appellate court may make its own determination when the case involves resolution of questions of law where the facts are undisputed." (*Saathoff v. City of San Diego* (1995) 35 Cal.App.4th 697, 700 [41 Cal.Rptr.2d 352].) This case presents a purely legal question: the interpretation of section 44307.

### B.  *The Petition, As Amended, States a Claim for Relief*

The Department argues that SPRAWLDEF's oral amendments to the petition eliminated all of its claims for relief, thereby rendering the petition a legal and practical nullity and providing an additional ground for the trial court's denial. We disagree. The petition sought four categories of substantive relief: (1) a writ of mandate to set aside and void the revised permit and order the Department to comply with all applicable law before approving the application; (2) declaratory relief; (3) a stay order; and (4) injunctive relief to correct any actions taken by Potrero Hills under the revised permit. The following colloquy took place at the demurrer hearing: "[The Court]: Well, first of all, I'm going to tell you what I'm going to do. If you're willing to

come off your plaintiff's stay, the injunctive relief and declaratory relief claims, I'll lean towards overruling the demurrer. [¶] [Counsel for SPRAWLDEF]: I'll submit, then, Your Honor. [¶] [The Court]: All right. Then the demurrer will be overruled based upon your dropping any claims for a stay [or] injunctive or declaratory relief."

Counsel for the Department continued to seek dismissal because Potrero Hills would be prejudiced even under the petition as so amended. The court disagreed. It said: "Well, I can go ahead with[out] an indispensable party so long as it doesn't cause any prejudice. And the fact that he's willing to drop the plaintiff's declaratory relief or the stay takes away the prejudice."

Here, the Department does not explicitly contend the court erred when it overruled the demurrer. Its contention, rather, is less direct. First, it asserts (without supporting legal authority) that SPRAWLDEF's prayer for a writ of mandamus was orally stricken from the petition along with the prayer for injunctive relief because "[s]etting aside and voiding a permit that has been issued to [Potrero Hills] would constitute a form of injunctive relief directed at the operations of the landfill." Not so. SPRAWLDEF voluntarily dropped its prayers for declaratory relief (par. 2), injunction (par. 4), and a stay (par. 3) in response to the court's concerns. However, it did *not* drop or strike its separately stated request for a writ of mandamus; nor did the court order that aspect of the prayer stricken. The record is quite clear that the prayer for a writ of mandate survived SPRAWLDEF's oral amendments.

██ Second, the Department argues the amended petition fails to afford any real remedy because (1) the landfill operator cannot be joined as a party and (2) the amended petition "cannot be construed to require any action that would prejudice the nonjoined [indispensable] party." The Department's point is not entirely clear, but it appears to mean the action cannot proceed because doing so might result in prejudice to Potrero Hills. If so, the Department misapprehends the law. "Failure to join an 'indispensable party' is not 'a jurisdictional defect' in the fundamental sense; even in the absence of an 'indispensable' party, the court still has the power to render a decision as to the parties before it which will stand. It is for reasons of equity and convenience, and not because it is without power to proceed, that the court should not proceed with a case where it determines that an 'indispensable' party is absent and cannot be joined." (*Sierra Club, Inc. v. California Coastal Com.* (1979) 95 Cal.App.3d 495, 500 [157 Cal.Rptr. 190].) In making the discretionary decision whether to permit such an action to proceed, the trial court must consider, inter alia, *"to what extent"* a judgment might be prejudicial to the absent party; *"the extent to which . . .* the prejudice can be lessened or avoided," "whether a judgment rendered in the [party's] absence will be adequate," and whether the plaintiff "will have an adequate remedy if

the action is dismissed for nonjoinder." (Code Civ. Proc., § 389, subd. (b), italics added.) Code of Civil Procedure section 389 thus envisions a circumstance where the possibility of *some* prejudice to an absent party does not mandate dismissal or, as the Department suggests, preclude the court from ordering relief as between properly joined parties.

Out of concern that any relief ordered in this case could prejudice Potrero Hills, we invited the parties to submit supplemental briefing. We asked them to address whether SPRAWLDEF's failure to sue Potrero Hills or name it as a real party in interest and thereby provide it with notice of this suit constituted a violation of Potrero Hills's due process rights and, if so, whether the due process violation independently compels affirmance of the trial court's ruling. We now conclude that since the Department decision to deny SPRAWLDEF a hearing was a ministerial determination, any relief ordered in this case will not implicate Potrero Hills's procedural due process rights.[3]

■ While procedural due process requires reasonable notice and opportunity to be heard before the government may deprive a person of a significant property interest, only governmental decisions that are *adjudicative* in nature trigger procedural due process concerns. (*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134]; *Calvert v. County of Yuba* (2006) 145 Cal.App.4th 613, 622 [51 Cal.Rptr.3d 797].) In contrast, ministerial actions by government are generally not governed by these principles, because they are "essentially automatic based on whether certain fixed standards and objective measurements have been met." (*Calvert, supra,* at p. 623; see *Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 504–505 [2 Cal.Rptr.2d 50].) "Where a statute requires an officer to do a prescribed act upon a prescribed contingency, his functions are ministerial. Where a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion." (*Rodriguez, supra,* at pp. 504–505.) Here, the Department's obligation to hold a hearing upon receipt of a petition challenging its alleged failure to act as required by law or regulation plainly falls within that category of governmental actions.

Nor are we persuaded by the Department's assertion that the amended petition is a nullity because the landfill operator "would not be bound by any

---

[3] It would be premature and unnecessary to address any issues of *substantive* due process at this juncture. We are directing the Department to hold a hearing. We express no opinion on whether, as a result of further proceedings, Potrero Hills may advance a claim based on substantive due process. (See, e.g., *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1183–1187 [56 Cal.Rptr.2d 223]; *Pettitt v. City of Fresno* (1973) 34 Cal.App.3d 813, 819–823 [110 Cal.Rptr. 262].)

order made by the Court in its absence and could collaterally attack the same." The prayer does not seek the Department to perform an "empty act," even if the operator, as opposed to the Department, is not bound by such an order. Nor does the hypothetical possibility of a collateral attack mean that no relief is available under the petition as it stands. Moreover, we assume that Potrero Hills will be given notice and the opportunity to be heard at the requested hearing, and that its rights will be fully respected at the hearing. We therefore proceed to the merits of the petition.

### C. *Section 44307 Affords SPRAWLDEF Standing to Request a Hearing*

The question of statutory interpretation here is relatively narrow: whether section 44307 affords a party other than a permit applicant or holder the right to an administrative hearing to challenge conditions imposed upon a solid waste permit. The Department contends that only permit applicants, as specified in the first sentence of section 44307, are authorized to challenge permit conditions. The statutory language does not support the Department's interpretation.

The first sentence of section 44307 is indisputably limited to permit applicants or holders. It states: "From the date of issuance of a permit that imposes conditions that are inappropriate, as contended by the applicant . . . the enforcement agency shall hold a hearing, if requested to do so, *by the person subject to the action*." (*Ibid.*, italics added.) However, the second sentence reads: "The enforcement agency shall also hold a hearing upon a petition to the enforcement agency from *any person* requesting the enforcement agency *to review an alleged failure of the agency to act as required by law or regulation*." (*Ibid.*, italics added.) The Department argues that to construe the second sentence as allowing "any person" a hearing to challenge permit conditions would (1) render superfluous the more specific first sentence giving that right to permit applicants and (2) violate the principle of *expressio unius est exclusio alterius*. (See, e.g., *California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; *Fields v. Eu* (1976) 18 Cal.3d 322, 328 [134 Cal.Rptr. 367, 556 P.2d 729].) The argument is unpersuasive.

█ Section 44307 authorizes an applicant to challenge conditions imposed on a permit if the applicant deems them to be "inappropriate." It allows any other person to challenge only an agency's failure to "act as required by law or regulation." The right accorded to nonapplicants is therefore narrower than an applicant's right to a hearing to challenge "inappropriate" conditions irrespective of whether they resulted from an agency's failure to act as legally required. The two rights to a hearing are readily harmonized without straining

to read into the second sentence of section 44307 an exception for challenges relating to permit conditions.

The Department alternatively contends that SPRAWLDEF lacks standing under section 44307 because its petition, although cast in terms of the agency's failure to reject or attach conditions to the Potrero Hills permit, in effect challenges Department *actions*—e.g., its acceptance of the application and issuance of the permit—rather than its failures to act. In the Department's view, the phrase "failure of the agency to act as required by law or regulation" affords a public right to an administrative hearing if the enforcement agency "does not perform the enforcement functions it is required to undertake by law," but does not authorize a hearing if the agency acts, but fails to act in the *manner* required by law or regulation. Under this interpretation, for example, SPRAWLDEF could demand an administrative hearing if the Department refused to hold a legally required hearing, but not if it held a hearing and then issued a permit in disregard of its legal requirements or duties. Again, we find this interpretation unpersuasive.

■ The primary rule of statutory interpretation is that the words are to be given their plain meaning. "In the first step of the interpretive process we look to the words of the statute themselves. [Citations.] The Legislature's chosen language is the most reliable indicator of its intent because ' "it is the language of the statute itself that has successfully braved the legislative gauntlet." ' [Citation.] We give the words of the statute 'a plain and common-sense meaning' unless the statute specifically defines the words to give them a special meaning." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082–1083 [36 Cal.Rptr.3d 650].)

We must therefore consider the "plain and commonsense meaning" of a "failure of the agency to act as required by law or regulation" (§ 44307). Webster's New Collegiate Dictionary defines "as" to mean "in the way or manner that," and "in accordance with what or the way in which." (Webster's New Collegiate Dict. (1977) pp. 64–65.) Reference to this common usage indicates a meaning that enforcement agencies must hold a hearing when "any person" requests one to review an alleged failure of the agency to act "in the way or manner that" or "in accordance with what or the way in which" is "required by law or regulation."[4]

---

[4] Webster's New Collegiate Dictionary notes an additional usage of "as" to indicate "when" or "while," as in "she spilled the milk *as* she got up" (Webster's New Collegiate Dict., *supra*, p. 64), connoting synchronized actions or events. We think that if the Legislature meant to convey only this meaning it would have used the word "when" to make its meaning clear. Because it did not do so, we will not give the statutory language the Department's more restricted and, in our view, strained, interpretation.

The Department relies for its contrary view principally on *Norton v. Southern Utah Wilderness Alliance* (2004) 542 U.S. 55 [159 L.Ed.2d 137, 124 S.Ct. 2373], but *Norton* is inapposite. First, it addresses the meaning of the phrase "failure to act," not "failure to act *as required by law or regulation.*" (See *id.* at pp. 61–62.) Second, the United States Supreme Court's analysis of "failure to act" is itself specific to, and dependent on, its setting in the context of the federal Administrative Procedure Act. The *Norton* plaintiffs claimed the Bureau of Land Management failed to take allegedly required actions to protect federal public lands from damage caused by off-road vehicles. (542 U.S. at p. 61.) To decide whether the Bureau's alleged failures were actionable under the Administrative Procedure Act, the court addressed the limits the Administrative Procedure Act imposes upon judicial review of agency inaction. Based on the language and structure of the federal act, the court interpreted "failure to act" as the failure to take one of a number of discrete, statutorily enumerated actions, and reasoned that the term "failure to act" must share their characteristic of discreteness under the principle of *ejusdem generis.* (542 U.S. at pp. 62–63.) In this specific context, and in this context alone, the court reasoned that "[a] 'failure to act' is not the same thing as a 'denial.' " (*Id.* at p. 63.)[5] That reasoning sheds no light on the state Public Resources Code provision at issue here.

■ But judicial decisions that apply to other parts of the Public Resources Code have used the phrase "as required by law," and we have no reason to ascribe a materially different meaning to that phrase in the context of section 44307. In decisions that review agency determinations under the California Environment Quality Act (§ 21000 et seq.), the courts have stated that the failure of an agency to "proceed as required by law" means the agency has abused its discretion. (See *Lincoln Place Tenants Assn. v. City of Los Angeles* (2005) 130 Cal.App.4th 1491, 1503 [31 Cal.Rptr.3d 353].) Here, our commonsense interpretation of the phrase is similar. In order to get a hearing, the petitioner must allege the agency did not process an application in the manner required by the law.

The Department argues SPRAWLDEF's interpretation "lead[s] to an unreasonable outcome which would unduly burden the LEA" because if "every *action*" it takes "could be construed to give adequate cause for the public to protest, then the LEA would have no assurances that its actions are·final." But section 44307 does not, under any interpretation, afford a public right to request an administrative hearing to review "every action" by the LEA.

---

[5] We also note a more substantive, if subtle, distinction. The provision at issue in *Norton* addresses judicial power, and the limits of judicial power, to review decisions made by administrative agencies. In contrast, section 44307 requires *agency* review of its own failures to act as legally required. Accordingly, the underlying considerations in *Norton* regarding the apportionment of responsibility and power between administrative and judicial offices are not at issue here.

Rather, it authorizes a member of the public to demand such a hearing only if he or she can allege that the agency failed to act as required by law or regulation. The Department provides no support for its "sky is falling" claim that the consequence of according this language its plain meaning "would be to hamstring the LEA, which would potentially spend more time in hearings then [*sic*] it would in performing inspections in the field and otherwise doing its job." Nor do we share the Department's view that it would be "absurd" for the Legislature to afford concerned members of the public the right to demand agency review when the agency fails to comply with legal mandates that implicate the public health and environment.

The statutory context and purpose of section 44307 reinforce our commonsense interpretation of the text. (Cf. *MacIsaac v. Waste Management Collection & Recycling, Inc., supra*, 134 Cal.App.4th at p. 1083 [courts will not follow the "plain meaning" rule when it would frustrate the manifest purposes of the legislation as a whole or lead to absurd results].) While both parties argue that the legislative history of section 44307 supports their own respective interpretation, little of it bears direct relevance to either side. Section 44307 was enacted in 1995 as part of a bill intended to overhaul various permitting and enforcement provisions of the California Integrated Waste Management Act. (Stats. 1995, ch. 952, § 32, p. 7324.) In 2004 the Legislature amended section 44307 to add the words "from any person" to the right to petition for an alleged failure to act. (See Historical and Statutory Notes, 56E West's Ann. Pub. Resources Code (2007 ed.) foll. § 44307, p. 280.) Our review of the legislative history sheds no light on the Legislature's specific intent in doing so; nor have we found in the records of either the original or amended legislation any evidence that directly concerns the intended meaning of "failure to act as required by law or regulation." But the general impetus for the 2004 amendments seems to have been a report from the Bureau of State Audits citing a need to *strengthen* local and state agency enforcement of *state minimum standards for solid waste handling*, an impetus that does not support the Department's narrow view of section 44307. We are not persuaded the 2004 amendment that expressly authorized "any person" to petition for a hearing was part of an overall intent to *restrict* challenges to *enforcement, agency procedures or decisions*, as the Department seems to suggest.

We conclude SPRAWLDEF's request for an administrative hearing alleged a failure to "act as required by law or regulation" within the meaning of section 44307.

## DISPOSITION

The order denying the petition for writ of mandamus is reversed and the case is remanded to the trial court with instructions to grant the petition for writ of mandate to require the Department to hold the hearing specified in section 44307.

Pollak, Acting P. J., and Jenkins, J., concurred.

A petition for a rehearing was denied November 20, 2008.