Filed 3/26/14  Secrest v. City of San Luis Obispo CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| STEPHEN SECREST et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>CITY OF SAN LUIS OBISPO,<br><br>    Defendant and Respondent. | 2d Civil No. B243445<br>(Super. Ct. No. CV060225 A & B )<br>(San Luis Obispo County) |

Stephen and Jeanne Secrest appeal from a judgment in favor of the City of San Luis Obispo finding no liability on the part of the City for damage to the Secrests' property caused by the overflow of a creek during heavy rain.  We affirm.

### *FACTS*

The Secrests' San Luis Obispo home is on Conejo Avenue.  Like several other homes on Conejo Avenue, the Secrests' house lies at the bottom of a steep watershed in an historic streambed, Andrews Creek.  Prior to 1939 the creek ran through what is now the Secrest property.  In 1939 a private developer altered the course of the streambed, diverting it from its natural path to run along the back of the properties on Conejo Avenue.  Ever since then, those properties, including

the Secrest property, have been subject to periodic flooding during rainstorms. When water overflows the diverted streambed, it follows its natural path downhill and across the Secrest property. It is undisputed that the Secrest property and other properties in the Conejo neighborhood have always been subject to periodic flooding. Former City Public Works Director David Romero testified that he first became concerned about the flooding in the Conejo neighborhood in 1982. He also testified that many areas in San Luis Obispo suffer flooding; so many, in fact, that the City lacks the funds to adequately address all of them.

The Secrests bought their property in 1993. On March 10, 1995, their property flooded during a rainstorm. The Secrests sued both the sellers of their property and the City, complaining that the sellers failed to disclose prior flooding of the property, and that the City's defective maintenance of the Andrews Creek drainage system had caused the flooding of their property. In 1997 the Secrests settled their claims against the City in exchange for monetary damages and the City's promise to implement modifications to the drainage system. The City also agreed to permit the Secrests' engineer, Jim Garing, to review the modification plans as they were developed. The settlement did not include promises by the City to permanently resolve the drainage problems in the area or to protect the Secrests' property from future flooding.

Between 1997 and 2000 the City constructed substantial modifications to the Andrews Creek drainage system. It constructed a new bypass system and strengthened the existing "rock catcher," a device for capturing debris and materials traveling downstream with the flow of water. Mr. Garing, the Secrests' expert, reviewed the plans for these modifications and made comments and suggested revisions. Some of his comments and suggestions were incorporated into the final modifications; some were not.

Between the flooding events of March 10, 1995, and December 31, 2004, there were 507 days of rain with virtually no flooding, an incidence of .2 percent. Some of those rainstorms were of greater magnitude and/or velocity than

2

the storm of December 30/31, 2004.  The drainage features constructed both before and after the 1995 flooding functioned perfectly.

During the rainy night of December 30/31, 2004, however, water running down the creek once again overflowed the channel and traveled its natural path downhill to the Secrests' property.  The intrusion was less severe than that of 1995.  Water did not enter the Secrests' residence, but flowed across the backyard and into the garage.  No other properties were damaged.  The Secrests again sued the City, alleging that the post-1995 modifications to the drainage system caused their property to flood, and asserting causes of action for inverse condemnation, dangerous condition of public property, and nuisance.  They also asserted a cause of action for injunctive relief and two causes of action for declaratory relief.

In 2008, four years after the December 2004 flooding event, the City commissioned a study of the Andrews Creek drainage system (the Wallace Deficiency Study).  Determination of the cause of damage to the Secrests' property in the 2004 flooding was not a stated purpose of the study; its purpose was "to analyze the deficiencies of the existing drainage system and to investigate several alternatives to alleviate the deficiencies so as to provide improved flood protection for vulnerable properties."  In discussing the "sediment and debris flows" in Andrews Creek, the report stated:  "As debris settles out, it can often form a mound at the point where loss of energy is the greatest – in the center of the channel. Subsequent flows will then travel around the mounded obstruction, carving a new path in the settled debris or the floodplain.  *This is what likely occurred in both the 1995 and 2005[sic] flood events . . . .*  In the 1995 event, debris flows settled out near the Hansen Inlet, diverting flows to the west.  In the 2005 [sic] storm, most of the debris accumulated at the trash racks near the bypass.  *Then, because a notch in the concrete abutment left the right bank vulnerable to overflow, floodwaters took that path, eventually finding their way to the backyards of properties on Conejo Avenue.*"  (Italics added.)

3

*The Trial*

The parties agreed to have the court try the liability phase of the trial. At the conclusion of the Secrests' case-in-chief the City moved for judgment pursuant to Code of Civil Procedure section 631.8 as to all six of the Secrests' causes of action.[1] The trial court granted the motion, finding that the Secrests had failed to prove that the City's post-1995 improvements to the Andrews Creek drainage system caused the Secrests' damage and, even if the improvements were the cause of the damage, the Secrests had failed to prove that the improvements were unreasonable. The court stated: "Each of Plaintiffs' causes of action requires that Plaintiffs establish both causation and unreasonableness. Absent proof of these two elements, the Court need not consider or address whether or not other elements were proven. Plaintiffs' failure to prove causation and unreasonableness is fatal to each cause of action." The court did not make express factual findings concerning the Secrests' causes of action for injunctive and declaratory relief.

*DISCUSSION*

When ruling on a challenge to the trial court's judgment given under section 631.8, the appellate court's inquiry "'". . . begins and ends with"' a determination whether any substantial evidence exists, contradicted or uncontradicted, which will support the findings. [Citation.]'" (*Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1255.) Section 631.8 authorizes the trial court to weigh evidence and make findings. (*Jordan*, *supra*, at p. 1255, citing *County of Ventura v. Marcus* (1983) 139 Cal.App.3d 612, 615.) In doing so, the court may refuse to believe witnesses and draw conclusions at odds with expert opinion. The trial court's grant of the motion will not be reversed if its findings are supported by substantial evidence. (*Ibid.*)

---

[1] All references are to the Code of Civil Procedure unless noted otherwise.

4

*Inverse Condemnation*

When a public entity's publicly managed flood control facilities cause property damage, the entity "is liable only if its conduct posed an unreasonable risk of harm to the plaintiffs, and that unreasonable conduct is a substantial cause of the damage to plaintiff's property . . . ." (*Locklin v. City of Lafayette* (1994) 7 Cal.4th 327, 367 (*Locklin*).) The trial court thus correctly determined that proof of both causation and unreasonableness is necessary to the Secrests' inverse condemnation cause of action.[2]

### 1.  Causation

To satisfy the causation element of inverse condemnation, the plaintiff must prove "'a substantial cause-and-effect relationship excluding the probability that other forces alone produced the injury.' [Citation.]" (*Belair v. Riverside County Flood Control District* (1988) 47 Cal.3d 550, 559 (*Belair*).) "Where independently generated forces not induced by the public flood control improvement – such as a rainstorm – contribute to the injury, proximate cause is established where the public improvement constitutes a *substantial concurring cause* of the injury, i.e., where the injury occurred in substantial part because the improvement failed to function as it was intended. The public improvement would cease to be a substantial contributing factor, however, where it could be shown that the damage would have occurred even if the project had operated perfectly, i.e., where the storm exceeded the project's design capacity." (*Id.*, at pp. 559-560.)

Substantial evidence supports the trial court's finding that the City's post-1995 modifications to Andrews Creek were not a substantial concurring cause of damage to the Secrests' home during the 2004 storm, i.e., that the damages occurred "because the improvement failed to function as it was intended." (*Belair*,

---

[2] The Secrests' argument that the proper standard is one of strict liability (*Albers v. County of Los Angeles* (1965) 62 Cal.2d 250) is meritless. The Supreme Court has rejected the *Albers* strict liability standard in the context of public flood control projects. (*Locklin*, *supra*, 7 Cal.4th at p. 367 ["The rule of strict liability generally followed in inverse condemnation [citing *Albers*] is not applicable in this context"].)

*supra*, 47 Cal.3d at pp. 559-560.) The city's witness, Jay Walter, who reviewed the historic rain data, testified that between March 10, 1995, and December 31, 2004, there were 507 rain days, some rain events of a larger magnitude and of longer intensity than that which occurred on December 30/31, 2004. Walters testified that the water that caused damage in the 2004 flooding escaped the channel at the location of the rock catcher, just as it did in the 1995 flooding. The Secrests presented no evidence that any feature of the drainage system functioned any differently on December 30/31, 2004, than it had during the 507 rainstorms when their property did not flood.

To prove causation, the Secrests relied on the Wallace Deficiency Study commissioned by the City in 2008 and the testimony of the author of that study, Barry Rands. The Wallace Deficiency Study focused on a "notch" or "gap" on one side of the rock catcher. The Wallace Study states that "because a notch in the concrete abutment left the right bank vulnerable to overflow, floodwaters took that path, eventually finding their way to the backyards of properties on Conejo Avenue."

There was no dispute that the rock catcher was the source of the flooding in both 1995 and 2004. Nor was there any dispute that the rock catcher was modified following the 1995 flooding: the level of the rock catcher was raised by 12 inches, increasing its capacity to withstand the flow of water. The additional height created a "notch" – a space between the vertical edge of the rock catcher wall and the adjacent earth. Barry Rands described this notch as a "weak point" in the rock catcher. Jay Walter testified, however, that the notch was not a flaw in the rock catcher that caused water to flow toward the Secrests' property in 2004 that would not have done so in the 1995 flood. Walter testified that the bottom of the notch in 2004 was no lower than the top of the rock catcher in 1995, and that the water escaped at the same location – not higher, not lower – during both flood events. Walter also testified that a fence built by the Secrests' neighbors, the

6

Moores, partially caused the Secrests' damage by causing the water to bypass the Moore property and flow onto the Secrests' property.

Jay Walter also offered a different theory of causation than that posed by the Secrests. He opined that during the 2004 storm "the rainfall loosened a large amount of sediment and debris that came down through the creek channel into the rock catcher, essentially at one time, which, . . . essentially plugged up the rock catcher and prevented water from getting into the bypass structure, into the two 36-inch pipes. [¶] Because of the sudden movement of that material into the rock catcher, it minimized its effectiveness and caused water to escape out of the channel, and then flood the downstream properties." Walter articulated the facts upon which his opinion was based, testifying to his knowledge of illegal grading on the Mott property upstream, and opining that "if material that had been recently graded had become saturated, it could be moved to flow into the creek channel and then downstream towards the rock catcher." Walter's testimony substantially supports the trial court's finding that the City's post-1995 modifications to the drainage system did not cause the flooding of the Secrests' property in 2004. Although Walter's testimony conflicted with that of the Secrests' expert, Barry Rands, the trial court was free to draw conclusions at odds with the Secrests' expert. (*County of Ventura v. Marcus*, *supra*, 139 Cal.App.3d at p. 615.)

### 2. Unreasonable Conduct

A public entity is liable for damage caused by its conduct "only if its conduct posed an unreasonable risk of harm to the plaintiffs . . . ." (*Locklin*, *supra*, 7 Cal.4th at p. 367.) Even if the Secrests had met their burden of proving that the post-1995 improvements of the Andrews Creek drainage system caused the 2004 damage to their property, they failed to show that the City's improvements posed an unreasonable risk of harm to the Secrests.

Whether a public agency acted reasonably is a fact-based inquiry. (*Belair*, *supra*, 47 Cal.3d at p. 566.) In *Locklin*, the Supreme Court identified six factors for use in assessing public entity liability: "(1) The overall public purpose

7

being served by the improvement project; (2) the degree to which the plaintiff's loss is offset by reciprocal benefits; (3) the availability to the public entity of feasible alternatives with lower risks; (4) the severity of the plaintiff's damage in relation to risk-bearing capabilities; (5) the extent to which damage of the kind the plaintiff sustained is generally considered as a normal risk of land ownership; and (6) the degree to which similar damage is distributed at large over other beneficiaries of the project or is peculiar only to the plaintiff." (*Locklin*, *supra*, 7 Cal.4th at pp. 368-369.)

The trial court examined the City's post-1995 improvement efforts in light of the *Locklin* factors and found that the City's conduct had been reasonable. We review the court's factual findings under the substantial evidence standard. (*Paterno v. State of California* (2003) 113 Cal.App.4th 998, 1023.) The application of the appropriate legal standard to the facts properly found by the trial court is a legal question. (*Ibid.*)

Jay Walter testified that both the 1997 and the 1999-2000 modifications of the Andrews Creek drainage system were reasonable. He testified that the modifications to the rock catcher, specifically, were a reasonable effort to alleviate the flooding in the drainage area. While the Secrests' expert Jim Garing testified otherwise, the trial court was free to accept Walter's testimony and to reject Garing's. (*County of Ventura v. Marcus*, *supra*, 139 Cal.App.3d at p. 615.) The testimony of Jay Walter is sufficient to support the trial court's findings.

Specifically, substantial evidence supported the trial court's finding that: the overall purpose of the drainage improvements was to reduce the number of incidents and the extent of water escaping the channel (*Locklin* factor 1); the Secrests shared in the benefits of the improvements and would, in fact, have suffered greater and more frequent flooding damage in the absence of the improvements (*Locklin* factor 2); periodic flooding is a normal risk of owning property situated in a natural creek bed (*Locklin* factor 5); and damage to the Secrests' property, although they were apparently the only owners affected in the

8

2004 incident, is the sort of damage other residents of the natural streambed would normally expect (*Locklin* factor 6).  (*Locklin*, *supra*, 7 Cal.4th at pp. 368-369.)

The Secrests contend that the trial court improperly weighed "the availability . . . of feasible alternatives with lower risks" (*Locklin* factor 3).  (*Locklin*, *supra*, 7 Cal.4th at pp. 368-369.)  The record does not support this conclusion.  Feasibility includes a consideration of costs, as well as effectiveness.  (*See Bunch v. Coachella Valley Water District* (1997) 15 Cal.4th 432, 451-452 [trial court properly considered evidence of the District's limited budget and its allocation of funds among all its activities]; Van Alstyne, *Inverse Condemnation:  Unintended Physical Damage* (1969) 20 Hastings L.J. 431, 491 [<http://clrc.ca.gov/pub/Printed-Reports/Pub088.pdf.> as of 3/12/14].)  The City considered several alternatives before implementing the post-1995 improvements.  Some were found to be financially unfeasible.  One option, a wall along the City's drainage easement, would have created flooding risks for properties that had not previously been flooded, a potential that was of particular concern to the City.  Reasonableness does not require the City to select the "best" alternative.  The Secrests do not prove the City's decision is unreasonable by identifying another alternative that might have worked better, such as the adoption of a California Environmental Quality Act (CEQA)-recommended safe-overflow path.  In any event, there was no evidence that such an overflow path would fully protect the Secrests' property from periodic flooding.

Finally, the Secrests contend that the trial court improperly considered their failure to maintain flood insurance when weighing their damage against risk-bearing capabilities (*Locklin* factor 4) and that this error requires reversal.  (*Locklin*, *supra*, 7 Cal.4th at pp. 368-369.)  The trial court found that by procuring such insurance, "[t]o a certain extent, the [Secrests] could protect themselves from some of the loss."  The trial court did not consider any other "risk-bearing capabilities" in weighing the costs to the Secrests of protecting their property from further damage.  (*Id.*, at pp. 368-369.)  The courts have declined to consider maintenance of flood

9

insurance as a measure of protecting against loss.  The trial court's reference to insurance, however, does not require reversal.  There is no requirement that all six *Locklin* factors must be found in favor of the City to support judgment in its favor, nor is it necessary that all six factors be weighed equally.  The "Locklin factors are not elements of a cause of action for inverse liability, but, when balanced, indicate whether the owner, if uncompensated would contribute more than his proper share of the public undertaking.' [Citations.]" (*Paterno v. State of California*, *supra*, 113 Cal.App.4th at p. 1025.)  The statement of decision does not indicate that the trial court overweighted the Secrests' failure to maintain flood insurance in determining that the City acted reasonably.

Substantial evidence supports the trial court's finding that the Secrests failed to prove two critical elements of their inverse condemnation cause of action: causation and unreasonableness.  The trial court thus properly granted the City's motion for judgment on the inverse condemnation cause of action.

*Dangerous Condition of Public Property*

The Secrests' First Amended Complaint also alleges a cause of action for dangerous condition of public property.  That cause of action also requires proof of causation and unreasonableness.  "[A] public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that . . . [a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition . . . ." (Gov. Code, § 835.)

To establish causation, a plaintiff must prove that the defendant's conduct was a substantial factor in bringing about his or her harm.  (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 312.)  The standard is indistinguishable from the causation standard applied in inverse condemnation cases involving flood

10

control – the conduct of the public entity must be a "substantial concurring cause" of the plaintiff's damage.  (*Belair*, *supra*, 47 Cal.3d at pp. 559-560.)  Because substantial evidence supports the trial court's finding that the Secrests failed to prove that the City's post-1995 improvements caused the damage to their property or that the post-1995 improvements created a reasonably foreseeable risk of the kind of injury that the Secrests incurred, their dangerous condition of public property cause of action also fails.

*Nuisance*

The Secrests' First Amended Complaint alleges a claim of nuisance, citing both Civil Code sections 3479 (private nuisance) and 3480 (public nuisance). Although each is a separate offense, both require that a defendant's conduct be a "substantial factor" in causing plaintiff's harm.  (CACI Nos. 2020, 2021.)  Both torts also require that the defendant's interference with a protected interest be unreasonable.  (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 937-938 [private nuisance]; *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1105 [public nuisance].)  Because substantial evidence supports the trial court's finding that the City's post-1995 improvements were not a substantial cause of the damage to the Secrests' property and were not unreasonable, the Secrests were likewise not entitled to judgment on their nuisance cause of action.

*Injunctive relief*

The Secrests' fourth cause of action, for injunctive relief, seeks orders restraining the City from engaging in the "unreasonable conduct" alleged in the inverse condemnation cause of action, specifically, obstruction of a public drainage easement and failure to provide a "safe pathway" for floodwaters.  Given our determination that the City is not liable to the Secrests - either in tort or in inverse condemnation – injunctive relief is not available.

This disposes of the claim for injunctive relief pled in the First Amended Complaint.  In their opening and reply briefs, however, the Secrests significantly shift the focus of that claim.  They characterize their injunctive relief

11

cause of action as one "to enforce the CEQA adopted mitigation measures for a safe overflow path." The First Amended Complaint does not request any relief pursuant to CEQA or allege any facts concerning CEQA violations. Accordingly, the Secrests have waived their right to raise the CEQA issue on appeal. (*American Continental Ins. Co. v. C & Z Timber Co*. (1987) 195 Cal.App.3d 1271, 1281 ["An argument or theory will generally not be considered if it is raised for the first time on appeal"].)

The Secrests' argument that "[t]he existence of legal duties under CEQA are reviewed de novo" does not require a different result. The case the Secrests rely on, *Lincoln Place Tenants Association v. City of Los Angeles* (2005) 130 Cal.App.4th 1491, does not stand for this proposition. The Secrests' action does not involve a trial court's determination of the adequacy of an environmental impact report. Nothing in *Lincoln Place Tenants Association* suggests that the Secrests are entitled to raise for the first time on appeal a question of CEQA law that was neither pled nor litigated in the trial court and they cite no other authority for that proposition.

*Declaratory Relief*

In their fifth cause of action, the Secrests seek a declaration that the City has no right to engage in the "unreasonable conduct alleged herein." The fifth cause of action for declaratory relief action is based on the facts that support the Secrests' inverse condemnation claims. "The subject matter of an action and the issues involved are determinable from the facts pleaded, rather than from the title or prayer for relief. [Citations.]" (*Luckey* v. *Superior Court* (1930) 209 Cal. 360, 366.) The Secrests' fifth cause of action "is not, therefore, declaratory in character, but in fact presents essentially the same issues which would be involved upon a determination" of plaintiffs' other causes of action. *(Standard Brands of California v. Bryce* (1934) 1 Cal.2d 718, 721; *C.J.L. Construction, Inc. v. Universal Plumbing* (1993) 18 Cal.App.4th 376, 390-391.) In any event, because substantial evidence supports the trial court's finding that the City did not act unreasonably in

12

implementing the post-1995 improvements, the Secrests are not entitled to the declaration they request and the trial court did not err in granting the City's motion for judgment on this issue.

In their sixth cause of action, the Secrests seek a declaration that the 1997 Release and Settlement Agreement between the City and the Secrests does not impair their right to maintain this action for inverse condemnation. The issue is moot. The trial court resolved the issue of the Secrests' entitlement to maintain this action by trying it on the merits and specifically finding that the City's conduct was not unreasonable and did not cause the Secrests' damages. The Secrests are not entitled to the requested declaratory relief.

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to the City.

<u>NOT TO BE PUBLISHED.</u>

O'DONNELL, J.[*]

We concur:

GILBERT, P. J.

PERREN, J.

---

(Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

13

Dodie A. Harman, Judge

Superior Court County of San Luis Obispo

_____

William S. Walter for Plaintiffs and Appellants.

Hall, Hieatt & Connely, Jay A. Hieatt and Molly E. Thurmond for Defendant and Respondent.